FILED
2025 NOV 26 AM 8:56
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RASHIDA B. BEY, SUI JURIS,<br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br>EQUIFAX INFORMATION SERVICES, LLC;<br>TRANSUNION, LLC;<br>CAPITAL ONE AUTO FINANCE,<br> a division of Capital One, N.A.;<br>FIFTH THIRD BANK, N.A.,<br>Defendants. | Civil Action No.:<br><br>3:25-cv-01378<br><br>COMPLAINT FOR DAMAGES,<br>INJUNCTIVE RELIEF,<br><br>AND WILLFUL VIOLATIONS<br>OF THE FAIR CREDIT<br>REPORTING ACT<br><br>(15 U.S.C. §1681 et seq.)<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,

## AND WILLFUL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### (15 U.S.C. §1681 et seq.)

### I. PRELIMINARY STATEMENT

1. Plaintiff, **Rashida B. Bey, Sui Juris**, brings this civil action against Experian, Equifax, TransUnion, Capital One Auto Finance, and Fifth Third Bank for willful and negligent violations of the **Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq.**, and related federal law.

2. This action arises from Defendants' **multi-year pattern** of unlawfully reporting, furnishing, publishing, and "verifying" **false information** about Plaintiff, including but not limited to:
a. misattributing primary liability for a loan for which Plaintiff was **only a co-signer**,
b. fabricating a delinquency after the loan had been **paid in full**,
c. reversing a lawful payoff after issuing a **clean title**,

d. creating and furnishing a **phantom balance exceeding $45,000**,

e. repeatedly "verifying" information that **contradicted documentary evidence**,

f. publishing duplicate, re-aged, and inaccurate tradelines, and

g. maintaining a "mixed file" with name and address variations not belonging to Plaintiff.

3. Defendants' misconduct has caused Plaintiff substantial harm, including denial of credit opportunities, inability to obtain transportation and housing, significant emotional distress, reputational injury, and financial losses. Plaintiff seeks **damages exceeding $15,000,000**, including actual, statutory, and punitive damages consistent with 15 U.S.C. §1681n.

4. Each Defendant acted **willfully, recklessly**, or **negligently**, and despite Plaintiff's multiple disputes and documentary submissions, Defendants refused to perform lawful duties mandated by the FCRA.

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction pursuant to **28 U.S.C. §1331** because this action arises under federal law, specifically the FCRA, 15 U.S.C. §1681 et seq.

6. Venue is proper in the Middle District of Tennessee under **28 U.S.C. §1391(b)** because Plaintiff resides in this District, and a substantial portion of the events or omissions giving rise to the claims occurred here.

7. Defendants conduct substantial and continuous business within this District and maintain contacts sufficient to establish personal jurisdiction.

## III. PARTIES

8. **Plaintiff, Rashida B. Bey, Sui Juris**, is a natural person residing in Antioch, Tennessee, and is a "consumer" as defined by 15 U.S.C. §1681a(c).

9. **Experian Information Solutions, Inc.** is a nationwide consumer reporting agency ("CRA") headquartered in Costa Mesa, California.

Page **2** of **20**

10. **Equifax Information Services, LLC** is a nationwide CRA headquartered in Atlanta, Georgia.
11. **TransUnion, LLC** is a nationwide CRA headquartered in Chicago, Illinois.
12. **Capital One Auto Finance**, a division of Capital One, N.A., is a furnisher of credit information and is headquartered in Plano, Texas.
13. **Fifth Third Bank, N.A.**, is a furnisher of credit information headquartered in Cincinnati, Ohio.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Status as Co-Signer / Secondary Obligor

14. Plaintiff was **not** the primary borrower on the Capital One Auto Finance account at issue.
15. Plaintiff was listed **solely as a co-signer / secondary obligor** to provide credit support for the primary borrower.
16. At all relevant times, Plaintiff was **not contractually responsible** for monthly payments, principal balance, interest charges, late fees, or deficiency balances associated with the loan.
17. Federal regulatory guidance and industry standards distinguish co-signers from primary obligors, and furnishers are required to accurately report each consumer's role and level of responsibility.
18. Defendant Capital One Auto Finance ("Capital One") was aware of Plaintiff's secondary/co-signer status at all relevant times.

### B. The Loan Was Paid in Full in January 2023

19. In January 2023, the primary borrower **paid the auto loan in full**, satisfying all financial obligations owed to Capital One. Despite the loan being paid in full on January 18, 2023, Defendants reported a delinquency beginning in February 2023 and a charge-off

Page 3 of 20

beginning in May 2023. This is chronologically impossible, as no payments were due after January 18, 2023 and the account carried a $0 balance. The CRAs' payment history displays 'no data' for January–February 2023 (gray boxes), yet simultaneously lists 'Delinquency First Reported: Feb 2023,' a contradiction indicating inaccurate and re-aged reporting in violation of FCRA §623(a)(5).

20. Capital One acknowledged the payoff, closed the account, and issued a **clean Tennessee motor vehicle title** showing no lienholder interest.
21. Plaintiff lawfully transferred this title into an established trust shortly thereafter.
22. Once a payoff is received and the title is released, the account is **extinguished**, and all reporting must reflect a **$0 balance, paid/closed** status, and **no delinquency**.
23. Capital One had actual knowledge that the account had been satisfied and was no longer active.

## C. Capital One Unlawfully Reversed the Payoff in April 2023

24. In or around April 2023, Capital One performed an unexplained and unauthorized **"reversal"** of the January 2023 payoff.
25. Capital One had no contractual, statutory, or factual basis to reverse the payoff, reopen the account, or treat the previously satisfied loan as delinquent.
26. Capital One did not provide Plaintiff with notice, explanation, billing statement, deficiency notice, or lawful justification for the reversal.
27. Capital One thereafter began furnishing **false, derogatory information** concerning Plaintiff to the CRAs.

## D. Capital One Created a False Delinquency and a Phantom Balance

28. After reversing the payoff, Capital One fabricated a **delinquency status** on an account that had been paid in full months earlier.

29. Capital One furnished a new **inflated balance exceeding $45,000**, despite having previously issued a clean title and acknowledging the account was paid.
30. The appearance of an inflated and fabricated balance of approximately $45,862 in July 2025—over two and a half years after the loan was paid in full—demonstrates that Capital One resurrected a closed and extinguished loan, creating a phantom balance and re-aging derogatory information. This conduct constitutes willful furnishing of inaccurate information under FCRA §623(a)(1)(A) and reckless disregard under §1681n.
31. Capital One also reported Plaintiff as the **responsible party**, despite Plaintiff being only a co-signer and not the primary obligor. The Equifax report identifies Plaintiff as 'Joint Account Responsibility,' which further misrepresents her role as a co-signer only and not the primary obligor. Defendants' reporting misattributed liability to Plaintiff despite the primary borrower being Ali Abdul Hakeem, as evidenced by **Exhibits A and B**.
32. The balance continued to increase month after month, representing unlawful **phantom interest**, "re-aging," and fabricated delinquency.
33. Capital One's reporting was materially false, misleading, and inconsistent with its own internal records.

## E. Defendants Experian, Equifax, and TransUnion Published the False Information

34. The three national CRAs—Experian, Equifax, and TransUnion—published the false Capital One data on Plaintiff's consumer reports.
35. The CRAs did not implement procedures to ensure maximum possible accuracy as required by **FCRA §1681e(b)**.
36. The CRAs displayed inconsistent balances, dates, payment histories, and status codes across their respective reports.
37. Despite possessing information showing Plaintiff was a co-signer and that the loan had been paid, the CRAs published Plaintiff as the responsible delinquent party.
38. The CRAs materially harmed Plaintiff by displaying this false data to lenders and other third parties.

## F. Plaintiff's Disputes and Defendants' Failure to Conduct Reasonable Reinvestigations

39. Plaintiff disputed the Capital One tradeline with all three CRAs multiple times from 2023 through 2025.
40. Plaintiff provided clear documentary evidence, including:
    a. proof of January 2023 payoff,
    b. the issued title,
    c. trust transfer documentation,
    d. confirmation of secondary signer status,
    e. copies of statements showing the phantom balance inflation.
41. The CRAs forwarded automated dispute codes (ACDVs) to Capital One.
42. Capital One failed to conduct a lawful investigation under **FCRA §623(b)**.
43. Capital One falsely verified the inaccurate information as "accurate."
44. The CRAs accepted these false verifications without performing any meaningful reinvestigation.
45. Plaintiff repeatedly requested:

- the basis for verification,
- the contract obligating her,
- validation of balances,
- investigation notes,
- payment history records.

46. Defendants refused or failed to provide the required information.
47. Each CRA issued responses stating the tradelines had been "verified" or "remained" without addressing the evidence submitted.
48. Plaintiff exhausted all administrative dispute processes afforded under the FCRA.

## G. Fifth Third Bank Reported Duplicate and Re-Aged Tradelines

49. Defendant Fifth Third Bank furnished multiple versions of the same tradeline with inconsistent:

- open dates,
- payment histories,
- delinquency dates,
- balances,
- account statuses.

50. Some of these tradelines appeared exclusively on one CRA, while others appeared inconsistently across the three.
51. Fifth Third repeatedly updated negative information without basis and re-aged delinquency dates in violation of **FCRA §623(a)(5)**.
52. These actions resulted in additional score suppression and damages.

---

## H. Name and Address Variations ("Mixed File")

53. Plaintiff's credit files contained multiple name variations, address variations, and identifiers that did not belong to Plaintiff.
54. These variations included:

- misspellings,
- alternate forms,
- nonexistent addresses,
- outdated locations,
- unrelated identifying information.

55. Mixed-file contamination is a known systemic problem in CRA databases and is a violation of **FCRA §1681e(b)**.
56. Plaintiff repeatedly demanded correction, but the CRAs failed to remove the inaccurate identifiers.

## I. Plaintiff's 2023 CFPB Complaints Provided Early Notice to All Defendants

57. On November 22, 2023, Plaintiff filed formal complaints with the Consumer Financial Protection Bureau ("CFPB") against Experian, Equifax, and TransUnion, notifying each Consumer Reporting Agency of inaccurate reporting, improper data handling, and multiple violations of the Fair Credit Reporting Act ("FCRA"). Copies of these complaints are attached as Exhibit G.
(See CFPB Complaint – Experian; CFPB Complaint – Equifax; CFPB Complaint – TransUnion.)

58. Plaintiff's CFPB filings clearly identified improper furnishing without permissible purpose, failure to maintain reasonable procedures to assure maximum possible accuracy under §1681e(b), unlawful reporting of adverse information, and failure to conduct reasonable reinvestigations under §1681i. Plaintiff also expressly revoked authorization for Defendants to furnish nonpublic personal information without consent.

59. Despite receiving these government-facilitated notices, Defendants failed to correct or delete the inaccurate information. Instead, throughout 2024 and 2025, Defendants introduced *additional* inaccuracies, including:
a. a fabricated $45,862 balance on a fully paid Capital One account,
b. re-aged delinquency codes beginning February 2023,
c. charge-off reporting beginning May 2023,
d. multi-year "C/O" notations inconsistent with payoff records, and
e. a newly misattributed "Joint Account Responsibility" designation.

60. Defendants' non-response to the 2023 CFPB complaints demonstrates a reckless and willful disregard for their legal obligations under FCRA §§1681e(b), 1681i, 1681n, and 1681o. Their continued false reporting, despite actual notice, establishes the "willfulness" threshold required for punitive damages.

61. The CFPB complaints further show that Plaintiff has suffered *ongoing, multi-year harm*, as Defendants continued publishing false derogatory information for nearly two years after

receiving notice. This prolonged misconduct exacerbated Plaintiff's reputational injury, emotional distress, financial harm, and credit suppression.

**J. Resulting Harm to Plaintiff**

62. As a direct result of Defendants' misconduct, Plaintiff suffered severe harm including:

a. denial of vehicle financing opportunities,

b. denial of credit cards,

c. denial of housing opportunities,

d. inability to obtain transportation,

e. increased interest rates,

f. reputational injury,

g. emotional distress,

h. financial strain,

i. damage to trust and fiduciary operations.

63. These harms continue to the present date.

## V. CAUSES OF ACTION

### COUNT I — VIOLATION OF FCRA §1681e(b)

**Failure to Assure Maximum Possible Accuracy (Against Experian, Equifax, TransUnion)**

64. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.
65. Under 15 U.S.C. §1681e(b), CRAs must "follow reasonable procedures to assure maximum possible accuracy" of consumer reports.
66. Experian, Equifax, and TransUnion reported Plaintiff as the responsible delinquent party on a loan for which Plaintiff was **only a co-signer**.
67. The CRAs reported an inflated and fabricated balance exceeding $45,000, despite the loan having been **paid in full** in January 2023.
68. The CRAs failed to detect or correct:

a. misattributed responsibility,

b. inaccurate balances,

   c. re-aged delinquency dates,

   d. duplicate Fifth Third tradelines,

   e. mixed-file identifiers.

69. Such reporting would have been prevented had the CRAs implemented reasonable accuracy procedures.

70. Courts have held that CRAs violate §1681e(b) when they publish inaccurate data after receiving evidence of errors.
    *See Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997).*

71. Defendants' violations were willful, entitling Plaintiff to punitive damages under 15 U.S.C. §1681n.

## COUNT II — VIOLATION OF FCRA §1681i

**Failure to Conduct Reasonable Reinvestigation (Against Experian, Equifax, TransUnion)**

67. Plaintiff incorporates prior paragraphs.

68. Under §1681i(a), CRAs must conduct a **reasonable reinvestigation** when a consumer disputes inaccurate information.

72. Plaintiff submitted multiple disputes with documentary evidence showing:

- payoff in January 2023,
- title issuance,
- trust transfer,
- secondary signer status,
- false balance inflation.

73. The CRAs relied entirely on automated ACDV responses from Capital One without independent verification.

74. Courts have held that CRAs may not rely blindly on furnishers where evidence indicates inaccuracies.

   *See Henson v. CSC Credit Servs., 29 F.3d 280 (7th Cir. 1994).*
75. Defendants' reinvestigations were cursory, perfunctory, and unreasonable.
76. Their conduct caused continued publication of false data.

## COUNT III — VIOLATION OF FCRA §623(a)(1)(A)

**Furnishing Information Known or Recklessly Ignoring It Was Inaccurate**
**(Against Capital One and Fifth Third Bank)**

77. Plaintiff incorporates all prior allegations.
78. Under §623(a)(1)(A), furnishers may not provide information they **know or have reasonable cause to believe is inaccurate**.
79. Capital One knowingly furnished false data by:
    a. reversing a legitimate loan payoff,
    b. fabricating a delinquency,
    c. reporting a fictitious balance exceeding $45,000,
    d. misattributing primary responsibility to Plaintiff.
80. Fifth Third knowingly furnished duplicate, inconsistent, and re-aged tradelines.
81. Defendants' actions constitute willful and reckless violations of §623(a).

## COUNT IV — VIOLATION OF FCRA §623(a)(2)

**Failure to Update and Correct Inaccurate Information**
**(Against Capital One and Fifth Third)**

79. Furnishers must promptly update and correct inaccurate information.

82. Capital One received Plaintiff's disputes but refused to update the tradeline to:

Page **11** of **20**

- paid/closed,
- $0 balance,
- Plaintiff not responsible party.

83. Fifth Third failed to correct inaccurate delinquency dates and duplicates.
84. These failures violate §623(a)(2).

## 🌸 COUNT V — VIOLATION OF FCRA §623(b)

**Failure to Conduct Reasonable Investigation After Notice**
**(Against Capital One and Fifth Third)**

85. After receiving ACDVs from the CRAs, furnishers must:

- conduct an investigation,
- review all relevant information,
- report accurate results.

86. Capital One did not review Plaintiff's evidence and instead "verified" false information.
87. Fifth Third failed to correct duplicate and inconsistent tradelines.
88. Defendants' actions violate §623(b).

## 🌸 COUNT VI — VIOLATION OF FCRA §605B

**Failure to Block Misattributed Information**
**(Against Experian, Equifax, TransUnion)**

87. §605B requires CRAs to **block** information resulting from identity or attribution errors.

89. Plaintiff repeatedly notified CRAs that:

- she was not the responsible party,
- the loan was paid,
- the tradeline was misattributed.

90. All three CRAs refused to block the inaccurate data.

## COUNT VII — NEGLIGENCE

(Against All Defendants)

91. Defendants owed Plaintiff a duty of reasonable care under the FCRA.
92. Defendants breached that duty by publishing and maintaining false information.
93. Plaintiff suffered actual damages as a result.

## COUNT VIII — DEFAMATION

(Against All Defendants)

94. Defendants published false statements concerning Plaintiff's financial responsibility.
95. These statements were unprivileged, false, and made with reckless disregard for the truth.
96. Plaintiff sustained reputational and emotional harm.

## COUNT IX — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

97. Defendants' conduct was extreme, outrageous, and beyond all bounds of decency.
98. Defendants intentionally or recklessly caused Plaintiff severe emotional distress.

## COUNT X — VIOLATION OF FDCPA §807(2)(A)

### Misrepresentation of Character, Amount, or Legal Status of a Debt
### (If Capital One or Fifth Third attempted collection)

99. If Defendants attempted to collect or implied collection on the fabricated balance, such conduct violates the FDCPA.

## VI. DAMAGES

100. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.
101. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered **actual damages, statutory damages**, and **punitive damages** recoverable under 15 U.S.C. §§1681n and 1681o.

---

### A. Actual Damages

102. Defendants' actions caused Plaintiff multiple denials of credit opportunities, including denials of vehicle financing, credit cards, and other consumer credit applications.
103. Plaintiff was unable to secure reliable transportation due to falsified derogatory reporting, directly impacting her ability to conduct personal, fiduciary, and professional responsibilities.
104. Plaintiff was denied or hindered in obtaining housing opportunities based on inaccurate and defamatory information appearing on her consumer reports.
105. Plaintiff suffered economic losses in the form of increased interest rates, reduced credit limits, and diminished financial mobility caused by significantly depressed credit scores.
106. Plaintiff suffered reputational harm as Defendants published false information portraying her as delinquent and financially irresponsible, despite being only a **co-signer** on a loan paid in full.

107. Plaintiff experienced substantial emotional distress manifested through anxiety, humiliation, frustration, sleep interference, and ongoing worry caused by Defendants' continued publication of false information.

108. Plaintiff expended significant time, effort, and resources attempting to correct the inaccurate reporting through numerous disputes, correspondence, document gathering, and administrative challenges.

109. Courts recognize time spent attempting to correct reporting errors as recoverable actual damages. *See Philbin v. Trans Union Corp., 101 F.3d 957 (3d Cir. 1996).*

110. Plaintiff's actual damages include, but are not limited to:

   a. loss of credit opportunities,

   b. increased cost of credit,

   c. denial of transportation and housing,

   d. emotional distress,

   e. reputational injury,

   f. financial loss and out-of-pocket expenses, and

   g. impairment of trust-based fiduciary operations.

---

## B. Statutory Damages

111. For each willful violation of the FCRA, Plaintiff is entitled to statutory damages under 15 U.S.C. §1681n(a)(1)(A).

112. Defendants committed **numerous willful violations**, including but not limited to:

   - failure to assure maximum possible accuracy,
   - failure to reinvestigate,
   - furnishing knowingly false information,
   - failure to correct known inaccuracies,
   - continuing to publish fabricated balances,
   - failing to block misattributed data.

113. Plaintiff seeks statutory damages against each Defendant for each violation.

## C. Punitive Damages

114. Under 15 U.S.C. §1681n(a)(2), punitive damages are available for willful violations of the FCRA.
115. Courts have consistently upheld punitive damages where furnishers or CRAs act with reckless disregard for accuracy requirements. *See Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142 (4th Cir. 2008)*.
116. Defendants' conduct was willful and reckless because:
    a. Capital One reversed a paid-in-full loan **months after releasing the title,**
    b. Capital One fabricated a **phantom balance exceeding $45,000,**
    c. The CRAs published and re-verified data contradicted by evidence,
    d. Fifth Third furnished duplicate and re-aged tradelines,
    e. Defendants ignored multiple disputes and failed to investigate,
    f. Mixed-file errors persisted over multiple years,
    g. Plaintiff repeatedly informed Defendants of the inaccuracies,
    h. Defendants continued publishing false data with indifference.
117. Defendants' conduct demonstrates "reckless disregard" of Plaintiff's rights as defined in *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007).
118. Civil penalties under FTC/CFPB enforcement actions commonly include **$2,500 per violation** or **penalties equal to up to 1% of a violator's net worth** under 15 U.S.C. §45(m)(1)(A). While private litigants do not directly recover civil penalties, these frameworks demonstrate the gravity of Defendants' misconduct and support a substantial punitive-damages award.

118A. Plaintiff therefore requests punitive damages in an amount sufficient to punish and deter willful misconduct, including an amount **consistent with up to 1% of each Defendant's net worth**, or such amount that a jury deems necessary to deter future violations.

## D. Injunctive and Equitable Relief

119. Plaintiff seeks injunctive relief requiring Defendants to:

   a. delete the inaccurate Capital One tradeline,

   b. correct all misattributed responsibility classifications,

   c. remove duplicate and re-aged Fifth Third tradelines,

   d. remove false balances and delinquency codes,

   e. correct name/address mismatches and mixed-file identifiers,

   f. implement procedures ensuring future compliance.

### E. Total Damages Requested

120. Plaintiff seeks actual, statutory, punitive, and equitable relief **in an amount exceeding $15,000,000**, or such amount as determined by a jury.
121. Plaintiff further seeks compensation reflecting the extensive time, effort, and administrative burdens caused by Defendants' wrongful conduct, consistent with attorney-fee-equivalent recovery under 15 U.S.C. §§1681n and 1681o.

## VII. PRAYER FOR RELIEF

122. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.
123. WHEREFORE, **Plaintiff respectfully prays that this Court enter judgment in her favor and against all Defendants, jointly and severally**, and grant the following relief:

### A. Actual Damages

A. Award actual damages in an amount to be determined at trial, including compensation for emotional distress, reputational harm, financial loss, diminished credit opportunities, impairment of fiduciary and trust operations, and all other recoverable injuries pursuant to 15 U.S.C. §§1681n and 1681o.

### B. Statutory Damages

B. Award statutory damages for each willful violation of the FCRA as permitted under 15 U.S.C. §1681n(a)(1)(A), assessed **separately against each Defendant.**

---

### C. Punitive Damages

C. Award punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for Defendants' willful and reckless misconduct, in an amount sufficient to punish and deter future violations, including an amount **consistent with up to 1% of each Defendant's net worth** or such amount a jury deems just.

---

### D. Injunctive and Equitable Relief

D. Issue injunctive relief requiring Defendants to:

1. Permanently delete the inaccurate Capital One Auto Finance tradeline;
2. Correct responsibility classifications to accurately reflect Plaintiff's secondary/co-signer status;
3. Remove duplicate, re-aged, and inaccurately dated Fifth Third Bank tradelines;
4. Remove fabricated balances, false delinquency codes, and inaccurate payment histories;
5. Correct mixed-file contamination, name variations, and erroneous address identifiers;
6. Implement and document reasonable procedures to assure maximum possible accuracy pursuant to 15 U.S.C. §1681e(b).

---

### E. Costs and Fee-Equivalent Compensation

E. Award costs, including the monetary equivalent of reasonable attorney's fees, administrative expenditures, postage costs, certified mailing expenses, and the substantial time Plaintiff was forced to expend correcting Defendants' misconduct.

## F. Interest

F. Award pre-judgment and post-judgment interest as allowed by law.

---

## G. Declaratory and Equitable Relief

G. Award declaratory and equitable relief necessary to restore Plaintiff's creditworthiness, prevent further harm, and require ongoing compliance with federal law.

## H. Total Damages

H. Award total damages in an amount **exceeding $15,000,000**, or such other amount as a duly empaneled jury determines to be fair, just, and appropriate.

## I. Further Relief

I. Grant such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, **Plaintiff hereby demands a trial by jury on all issues so triable.**

Executed on this <u>24th</u> day of <u>November</u>, 2025.

Executed by: _/s/ Rashida Bey_

**Rashida B. Bey, Sui Juris**
5331 Mt. View Road, 138
Antioch, Tennessee 37013
Phone: 615-810-4430
Email: rbbey@yahoo.com

# IX. CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Complaint** will be served upon each Defendant in accordance with the Federal Rules of Civil Procedure, by certified mail, return receipt requested, or by any other method authorized by Rule 4, at their appropriate business addresses.

Service will be executed promptly upon filing, and proof of service will be filed with the Court in accordance with Rule 4(l).

**Executed on this 24th day of November, 2025.**

**Executed by:** *Rashida Bey*

**Rashida B. Bey, Sui Juris**
5331 Mt. View Road, 138
Antioch, Tennessee 37013
Phone: 615-810-4430
Email: rbbey@yahoo.com